[Crim. No. 2410.   First Dist., Div. Two.   Aug. 1, 1946.]

In re SAMUEL KLEIN on Habeas Corpus.

Samuel Klein, in pro. per., for Petitioner.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

NOURSE, P. J.—Petitioner Samuel Klein was charged in Los Angeles County with the crime of forgery and on November 4, 1937, he entered a plea of guilty.  In December, 1937, he was granted three years' probation with the first three months to be served in the county jail.  Thereafter Klein was convicted in the Superior Court in San Francisco of a violation of Penal Code, section 476a—issuance of a check without sufficient funds with intent to defraud—and was sentenced to San Quentin Prison for the time provided by law. On July 14, 1939, petitioner was received at San Quentin where his imprisonment was fixed by the Board of Prison Terms and Paroles at six years with the last two years on parole.  He was released on parole on August 12, 1941, but

was returned to Folsom Prison on December 30, 1941, as a parole violator. Petitioner was thereupon notified that the Los Angeles probation order had been revoked on July 7, 1939; on March 15, 1942, a judgment-commitment was issued against him to run consecutively with the San Francisco judgment. This was sent to the warden of Folsom Prison where he was confined and it is under this judgment that he is now held in custody. He was not present in the superior court when this judgment was entered. Upon Klein's completion of imprisonment on the San Francisco judgment he was given a new number at Folsom and was informed that he was thereafter to serve under the Los Angeles commitment.

The prisoner heretofore filed a petition for a writ of habeas corpus with the District Court of Appeal of the Third District. The petition was granted, but as a result of a promise of a light sentence and immediate parole by state officials the petitioner withdrew his petition. This promise was not observed by the state. He was paroled on May 22, 1944, and later that year was inducted into the armed forces. In 1945, petitioner was given an honorable medical discharge from the service. His petition states that because of his discharge from the armed forces petitioner believed that he would not be required to report on parole to the California authorities. He was taken into custody in Massachusetts and returned to San Quentin on March 20, 1946, as a parole violator.

It is petitioner's contention that the superior court in Los Angeles County had no jurisdiction to enter the judgment—commitment of March 15, 1942, under these circumstances—that, if section 1203.2a applies, the judgment of March 15, 1942, was not entered within time—that, if that section does not apply, his presence in court was mandatory.

Section 1203.2a enacted in 1941 and amended in 1943 reads in part as follows: "If any person who has been released on probation is committed to a State prison for another offense, it is hereby made mandatory upon the probation officer of the county from which he was released on probation to report the commitment to the court within 30 days after being advised in writing of the commitment. Within 30 days thereafter the court shall revoke probation and impose sentence. The sentence of the court may be imposed in the absence of the defendant in such cases. In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, such person may not there-

after be sentenced under any authority retained in the granting of the probation.''

A great deal has been written and rewritten in reference to the ''jurisdiction'' of the superior court in revoking orders of probation and entering judgments of commitment. Sections 1191, 1193 and 1202 et seq. have been held ''procedural'' and not jurisdictional. *People* v. *Williams* (1944), 24 Cal.2d 848 [151 P.2d 244], cites and reaffirms the earlier cases in the majority opinion. To overcome the uncertainty of the law as expressed in these early cases the Legislature in 1941 enacted section 1203.2a to make mandatory the imposition of sentence within 30 days after notice of a second commitment, and to relieve the court of the necessity of bringing the prisoner before it at the time of sentence.

In the Williams case the majority brushed this section aside with the single statement that ''it applies only to a probationer who is subsequently committed in this state.'' Whether the statement is based on the fact that in the Williams case the subsequent commitment occurred in another state or on the fact that the second commitment occurred prior to the effective date of the statute is not clear. But it is clear to us, and no citation of authority is necessary to interpret the plain language of the code sections, that if section 1203.2a does not apply here because the subsequent commitment occurred prior to the effective date of the statute then that statute, insofar as it relieves the superior court of requiring the presence of the prisoner at time of sentence is likewise without application.

In the Williams case the court said (p. 853) : ''Generally, judgment must be pronounced in the presence of the defendant, unless after the exercise of reasonable diligence to procure the presence of the defendant the court shall find that it will be in the interest of justice that judgment be pronounced in his absence. (Pen. Code, § 1193.) Under this section a defendant must be personally present, and if he is not the court cannot pronounce judgment unless a proper showing of diligence is made as required therein. And even then the court may, in its discretion, find that it would not be in the interest of justice to pronounce judgment in the absence of the defendant. There are, of course, many reasons why a court might desire to have the defendant present when sentence is pronounced, and in a case such as we have here, where because of his confinement elsewhere it is not possible

to produce the defendant at the time probation is revoked, the court may consider that, in the interests of justice, judgment should not be imposed until defendant can be brought before the court."

This language was used as explaining the delay in entering the judgment while the prisoner was confined in a penitentiary of another state. No such circumstances are present here. The superior court in Los Angeles County revoked the probation in 1939. The respondent has produced no information on this action other than the copy of the clerk's minutes reading: "Violation of probation is filed. Probation is revoked. Bench warrant is issued." This entry is dated July 7, 1939, just seven days before the prisoner was delivered to the penitentiary under the San Francisco commitment. If the "proper showing of diligence" to procure his presence, as required by the Williams case, was made that fact would appear on the face of the record. It is a fair inference from all the circumstances that when the order of revocation was made the superior court knew or, with reasonable diligence could have learned, the petitioner was received at the penitentiary and could have been brought into the court for the purpose of sentence. When judgment was finally entered in 1942 the petitioner was again in custody, the superior court was so notified by the warden, and the prisoner could have then been brought before the court.

The respondent excuses the absence of the petitioner solely on the ground that section 1203.2a of the Penal Code dispenses with his presence. But, as we have heretofore stated, if the ruling of the Supreme Court in *People* v. *Williams, supra,* means that this section is not applicable in a case where the second "commitment" was made prior to the effective date of the statute then it is certainly not applicable as to the necessity of producing the prisoner for sentence. This conclusion follows the plain language of the statute which, with our emphasis added, reads: "If any person who *has been* released on probation *is* committed to a State prison for another offense, it is hereby made mandatory upon the probation officer. . . . *Within 30 days* thereafter the court *shall* revoke probation and impose sentence. The sentence of the court may be imposed in the absence of the defendant *in such cases.*" This can mean nothing else but that when, within the 30-day period, the court revokes probation and imposes sentence it may then dispense with the presence of the prisoner in court.

■   Since the petitioner has appeared in propria persona and was not permitted to argue the writ in open court, it should also be noted in fairness to him that there is serious doubt whether under the provisions of section 669 of the Penal Code the superior court in Los Angeles County, in entering its judgment in 1942 on a conviction for a crime made in 1937, could make the sentence run consecutively with a judgment entered in the superior court in San Francisco in 1939 based upon a conviction for a crime committed subsequent to the Los Angeles conviction. It is a well settled doctrine of American Jurisprudence as recognized in this state that when authority is given to "make the punishment fit the crime" the penalty must be imposed before the crime is committed. Hence, when petitioner was convicted in 1937 of a crime committed in that year, it would seem logical that the sentence or judgment should be based upon and follow the conviction and should not be influenced by subsequent events. The code section uses the words "conviction" and "judgment" interchangeably and it is a fair interpretation of the section as a whole that it is on a *later* "conviction" that the court may make the sentence run consecutively with a sentence on a *prior* conviction. If the Los Angeles judgment of 1942 had been based wholly upon the conviction of 1937, assuming that it was valid for any purpose, that judgment would automatically become concurrent under the terms of the section, and the petitioner would be entitled to his release at the end of a term running concurrently with the San Francisco commitment.

The prisoner is discharged.

Dooling, J., concurred.